UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BALTIMORE, MARYLAND

| | |
|---|---|
| IN THE MATTER OF: | IN REMOVAL PROCEEDINGS |
| Kilmar Armando ABREGO-GARCIA | File #A 201-577-119 |
| RESPONDENT | |

| | |
|---|---|
| **INDIVIDUAL HEARING DATE:** | August 9 and September 27, 2019 |
| **CHARGE:** | Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA" or the "Act"), as amended, in that the Respondent is an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. |
| **APPLICATIONS:** | INA § 208, Asylum; INA § 241(b)(3), Withholding of Removal; Protection Under Article 3 of the Convention Against Torture. |

**APPEARANCES**

**ON BEHALF OF RESPONDENT**
Lucia Curiel
Khatia Mikadze

**ON BEHALF OF THE DHS**
Amy Donze-Sanchez

**MEMORANDUM OF DECISION AND ORDER**

**I.   Procedural History**

The Respondent is a native and citizen of El Salvador. The Department of Homeland Security ("DHS") issued the Respondent a Notice to Appear ("NTA") on March 29, 2019 which alleged that the Respondent: (1) is not a citizen or national of the United States; (2) is a native and citizen of El Salvador; (3) entered the United States at or near an unknown place on or about an

unknown date; and (4) was not then admitted or paroled after inspection by an immigration officer.

At a Master Calendar Hearing the Respondent, through counsel, admitted the factual allegations contained in the NTA and conceded removability as charged. Based on the Respondent's admissions and concessions, the Court found his removability to be established by clear and convincing evidence as required by INA § 240(c)(3). *See also Woodby v. INS*, 385 U.S. 276 (1966). As relief from removal, the Respondent filed a Form I-589, Application for Asylum, Withholding of Removal, and Relief under Article 3 of the Convention Against Torture ("CAT"). The Respondent and his wife both testified in support of the applications. The Court reserved the matter for the issuance of a written decision.

The Court has considered the arguments of both parties and the entire record carefully. The following documentary evidence was considered by the Court and admitted into the record: Exhibit 1, the Notice to Appear; Exhibit 2, the I-213; Exhibit 3, the Respondent's application with all supporting documents; and Exhibit 5, Part A, explanation of the wife's pregnant condition while testifying.[1] All evidence and testimony admitted has been considered, even if not specifically addressed in the decision. Having reviewed the evidence of record and the applicable law, the Court's written decision and order now follow.

## II. Testimonial Evidence Presented

### A. Respondent

The Respondent is a 24-year old native of El Salvador. He was born in 1995 in Los Nogales neighborhood, San Salvador, El Salvador. The Respondent testified that he fears returning to his country because the Barrio 18 gang was targeting him and threatening him with death because of his family's pupusa[2] business. The Respondent's mother, Cecilia, ran the business out of her home. Although the business had no formal storefront, everyone in the town knew to get their pupusas from "Pupuseria Cecilia." The Respondent's father, brother and two sisters all helped run the family business. The Respondent's job was to go to the grocery store to buy the supplies needed for the pupusas, and then he and his brother would do deliveries four days a week to the people in

---

[1] Exhibit 4 is a Prince George's County Police Department Gang Field Interview Sheet. It was admitted for the limited purpose of showing that the Respondent was labeled a gang member by law enforcement.
[2] El Salvadorian stuffed tortillas.

the town that ordered pupusas from Cecilia.

At some point, Barrio 18 realized the family was making money from their family business and they began extorting the Respondent's mother, Cecilia. They demanded a regular stipend of "rent" money from the business, beginning with a monthly payment and then requiring weekly payments. The gang threatened to harm the Respondent, his older brother Cesar, and the family in general if their demands were not met. Alternatively, they told Cecelia that if she could not pay the extortion money, she could turn Cesar over to them to become part of their gang. The Abrego family paid the money on a regular basis, whenever they could, and hid Cesar from the gang. On one occasion, the gang came to the family's home and threatened to kill Cesar if the family did not pay the rent. The family responded by sending Cesar to the U.S.

After Cesar left, the gang started recruiting the Respondent. They told Cecilia that she would not have to pay rent any more if she let him join the gang. The mother refused to let this happen. The gang then threatened to kill the Respondent. When the Respondent was around 12-years old, the gang came to the home again, telling Cecilia that they would take him because she wasn't paying money from the family's pupusa business. The Respondent's father prevented the gang from taking the Respondent that day by paying the gang all of the money that they wanted. During the days, the gang would watch the Respondent when he went back and forth to school. The members of the gangs all had many tattoos and always carried weapons.

Eventually, the family had enough and moved from Los Nogales to the 10th of October neighborhood. This town was about 10 minutes away, by car, from Los Nogales. Shortly after the family moved, members of Barrio 18 from Nogales went to the 10th of October and let their fellow gang members know that the family had moved to that neighborhood. Barrio 18 members visited the house demanding the rent money from the pupusa business again. They went to the house twice threatening to rape and kill the Respondent's two sisters and threatening the Respondent. The Respondent's parents were so fearful that they kept the Respondent inside the home as much as possible. Finally, the family decided they had to close the pupusa business and move to another area, Los Andes, about a 15 minute drive from their last residence. Even at this new location, the family kept the Respondent indoors most of the time because of the threats on his life. After four months of living in fear, the Respondent's parents sent the Respondent to the U.S.

Even though the Respondent's father was a former policeman, they family never reported anything to the police regarding the gang extorting the family business. The gang members had

3

threatened Cecilia, telling her that if she ever reported anything to the police that they would kill the entire family. The family believed them, because they were well aware of the rampant corruption of the police in El Salvador and they believed that if they reported it to the police, the police would do nothing.

At present, even though the family has now shut down the pupusa business, Barrio 18 continues to harass and threaten the Respondent's two sisters and parents in Guatemala. Additionally, they have targeted a brother-in-law who now lives with the family.

### B. The Respondent's Wife

The Respondent's wife also testified, but her testimony related to two other particular social groups not reached in this decision.[3]

### III.   Eligibility for Asylum, Withholding and CAT Relief

#### A.   Asylum

An applicant for asylum bears the burden of establishing that he meets the definition of a refugee under INA § 101(a)(42)(A), which defines a refugee in part as an alien who is unable or unwilling to return to her home country because of persecution, or a well-founded fear of persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion. *Matter of S-P-*, 21 I&N Dec. 486, 489 (BIA 1996); 8 C.F.R. § 1208.13(a); INA § 208(b)(1)(B). The alien's fear of persecution must be country-wide. *Matter of Acosta*, 19 I&N Dec. 211, 235 (BIA 1985). Additionally, the alien must establish that he is unable or unwilling to avail himself of the protection of his country of nationality or last habitual residence. INA § 101(a)(42)(A); *see also Matter of A-B-*, 27 I&N Dec. 316, 325–26 (A.G. 2018). An applicant who establishes statutory eligibility for asylum still bears the burden of demonstrating that he merits a grant of asylum as a matter of discretion. INA § 208(b)(1); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987).

#### i.   Credibility and Corroboration

An alien bears the evidentiary burden of proof and persuasion in connection with any

---

[3] The other two particular social groups are: 1) Salvadoran male deportees labeled as MS-13 gang members by U.S. law enforcement; and 2) Immediate family of Jennifer Vasquez (the Respondent's wife.) The Court will not address the alternative claims for relief, as it is not necessary to do so at this time.

asylum application pursuant to section 208 of the Act. 8 C.F.R. § 1208.13(a); *see also Matter of S-M-J-*, 21 I&N Dec. 722, 723 (BIA 1997); *Matter of Acosta*, 19 I&N Dec. 211, 215 (BIA 1985); *Matter of Mogharrabi*, 19 I&N Dec. 439, 446 (BIA 1987). The Board of Immigration Appeals (BIA) has recognized the difficulties an asylum applicant may face in obtaining documentary or other corroborative evidence to support his claim of persecution. *Matter of Dass*, 20 I&N Dec. 120, 124 (BIA 1989). As a result, uncorroborated testimony that is credible, persuasive, and specific may be sufficient to sustain the burden of proof to establish a claim for asylum. *See* INA § 208(b)(1)(B)(ii); 8 C.F.R. § 1208.13(a); *Matter of Mogharrabi*, at 445. However, where it is reasonable to expect corroborating evidence for certain alleged facts, such evidence must be provided as long as the applicant has the evidence or can reasonably obtain it. *Matter of S-M-J-*, 21 I&N Dec. at 725. The absence of such corroboration may lead to a finding that an applicant has failed to meet his burden of proof. *Id.* at 725–26. The immigration judge must provide the applicant an opportunity to explain the lack of corroborating evidence and ensure that the applicant's explanation is included in the record. *See id.*; *Lin-Jian v. Gonzales*, 489 F.3d 182, 192 (4th Cir. 2007). The Board has made clear that an asylum applicant cannot meet his burden of proof by "general and vague" testimony, and "the weaker an alien's testimony, the greater the need for corroborative evidence." *Matter of Y-B-*, 21 I&N Dec. 1136, 1139 (BIA 1998).

In the instant matter, the Respondent provided credible responses to the questions asked. His testimony was internally consistent, externally consistent with his asylum application and other documents, and appeared free of embellishment. Further, he provided substantial documentation buttressing his claims. Included in this evidence were several affidavits from family members that described the family's pupusa business, and the threats by Barrio 18 to the various family members—in particular the Respondent—over the years. The court finds the Respondent credible. This finding is applicable to his other two claims as well (withholding under the Act and CAT protection).

### ii. One-Year Filing Deadline

Under INA § 208(a)(2)(B), an applicant for asylum must demonstrate by clear and convincing evidence that the application has been filed within one year after the date of the alien's arrival in the United States. Following the *Mendez Rojas v. Johnson* case (305 F. Supp. 3d 1176 (W.D. Wash., Mar. 29, 2018)), in a joint stay agreement, the Government agreed to treat pending

asylum applications by four classes of applicants as though filed within one year of arrival.[4] *See* 305 F. Supp. 3d at 1179. Members of Class A.II are individuals in removal proceedings who have been released from DHS custody after having been found to possess a credible fear of persecution, did not receive notice from the DHS of the one-year deadline, and filed an untimely asylum application. *See id.* Members of Class B.II are individuals in removal proceedings who express a fear of return to their country of origin, were released from DHS custody without a credible fear determination, did not receive notice from the DHS of the one-year deadline, and filed an untimely asylum application. *See id.*

Here, the Respondent's asylum application is time-barred without exception. INA § 208(a)(2)(B); 8 C.F.R. § 1208.4(a)(2). The Respondent testified that he entered the U.S. in 2012. However, he did not file his application for asylum until after he was detained in August 2019, seven years after his entry into the U.S. and well-beyond the one-year filing deadline. *See* Exh. 3. He has shown no changed or extraordinary circumstances that would entitle him to relief from the one-year bar. See 8 C.F.R. § 1208.4(a)(4) and (5). Based on the foregoing, the Respondent's application for asylum is time-barred and must be denied. We turn next to withholding of removal under the Act.

## B. Withholding of Removal Pursuant to INA § 241(b)(3)

Withholding of removal, in contrast to asylum, confers only the right not to be deported to a particular country rather than the right to remain in the U.S. *INS v. Aguirre-Aguirre*, 526 U.S. 415 (1999). To establish eligibility for withholding of removal, a respondent must show that there is a clear probability of persecution in the country designated for removal on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Stevic*, 467 U.S. 407 (1984). Such a showing requires that the respondent establish that it is more likely than not (i.e., a clear probability) that the alien would be subject to persecution if returned to the country from which the alien seeks withholding of removal. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987). The standard for withholding of removal is thus more stringent than the standard for asylum. *Stevic*, 467 U.S. at 429-430. Under the withholding of removal regulations at 8 C.F.R. § 1208.16(b)(1), however, if an applicant has suffered past persecution, then there is a presumption that the applicant's life or freedom would be threatened in the future in the country of removal.

---

[4] Classes A.I and B.I apply only to individuals who are not in removal proceedings. *See Mendez Rojas*, 305 F. Supp. 3d at 1179.

i.  **Past Persecution**

Persecution has been interpreted to include serious threats to an individual's life or freedom, or the infliction of significant harm on the applicant. *See Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985); *Li v. Gonzales*, 405 F.3d 171 (4th Cir. 2005). Persecution is generally assessed cumulatively, and relevant incidents are not to be evaluated in isolation. *See Baharon v. Holder*, 588 F.3d 228 (4th Cir. 2009). A death threat qualifies as persecution. *See Crespin-Valladares v. Holder*, 632 F.3d 117 (4th Cir. 2011). Extortion may constitute persecution, even if physical harm will be inflicted only upon failure to pay. *Oliva v. Lynch*, 807 F.3d 53 (4th Cir. 2015).

The Respondent suffered past persecution as he was threatened with death on more than one occasion. Therefore, DHS bears the burden of establishing "a fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five grounds" or that "[t]he applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." *See* 8 C.F.R. § 1208.16(b)(1).

The "one central reason" standard that applies to asylum applications pursuant to section 208(b)(1)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(B)(i) (2006), also applies to applications for withholding of removal under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A) (2006). *Matter of C-T-L-*, 25 I&N Dec. 341 (BIA 2010). An applicant must demonstrate that a statutorily protected ground would be "at least one central reason" for the feared persecution. *See* INA § 208(b)(1)(B)(i); *Matter of J-B-N- & S-M-*, 24 I&N Dec. 208 (BIA 2007) (holding that in a mixed motive asylum case, an applicant must prove that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for the claimed persecution). An alien need not show that a statutorily protected ground would be the central reason or even a dominant central reason, but rather must show that such a ground was more than an "incidental, tangential, superficial or subordinate" reason for the past persecution or feared future persecution. *Matter of J-B-N- & S-M-*, 24 I&N Dec. at 214; *see also Crespin-Valladares v. Holder*, 632 F.3d 117 (4th Cir. 2011); *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009). Persecution may be on account of multiple central reasons or intertwined reasons, and the full factual context must be taken into account when analyzing nexus. *Oliva v. Lynch*, 807 F.3d 53 (4th Cir. 2015).

### ii. Well-Founded Fear of Future Persecution and Internal Relocation

Based on the above, the Respondent has demonstrated the he was subject to past persecution on account of a statutorily protected ground. He is entitled to the presumption under the regulations that he would have a clear probability of future persecution on account of a protected ground. Given his testimony and other evidence concerning official corruption and other abuses, he has demonstrated that authorities were and would be unable or unwilling to protect him from past or feared future persecution. Given country conditions and the Respondent's inability to avoid the threat through internal relocation, the Respondent could not necessarily avoid the threat through internal relocation, nor would it be reasonable to expect him to do so. DHS has failed to carry their burden to show that there are changed circumstances in Guatemala that would result in the Respondent's life not being threatened, or that internal relocation is possible and reasonable. The facts here show that the Barrio 18 gang continues to threaten and harass the Abrego family over these several years, and does so even though the family has moved three times.[5]

### iii. Nexus to a Protected Ground

To be cognizable under the statute, members of a "particular social group" must share a "common immutable characteristic," which may be an innate characteristic or a shared past experience. *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018). In either case, it must be a characteristic that members of the group either cannot change or should not be required to change. To constitute a "particular social group" under the statute, the group must be (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question. *See Matter of A-B-*, 27 I&N Dec. 316 (married women in Guatemala who are unable to leave their relationships do not constitute a particular social group); *Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014) (former members of Mara 18 gang in El Salvador who renounced gang membership do not constitute a particular social group); *Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014); *Matter of C-A-*, 23 I&N Dec. 951 (BIA 2006) (former noncriminal drug informants do not present a cognizable social group); *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985).

Under well-established Fourth Circuit precedent, family ties may provide the basis for a

---

[5] The court understands that the family's moves have been only 15 minutes away each time. However, DHS has failed to show that internal relocation is not only possible, but reasonable to expect the Respondent to so relocate.

cognizable particular social group under the INA. *See, e.g., Crespin-Valladares v. Holder*, 632 F.3d 117, 124-126 (4th Cir. 2011) ("we can conceive of few groups more readily identifiable than the family"); *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015) ("membership in a nuclear family qualifies as a protected ground for asylum purposes"); *Cruz v. Sessions*, 853 F.3d 122, 127 (4th Cir. 2017) ("by virtue of her domestic partnership with Martinez, Cantillano Cruz was a member of a cognizable particular social group, namely, 'the nuclear family of Johnny Martinez'"); *Salgado-Sosa v. Sessions*, 882 F.3d 451, 457 (4th Cir. 2018) ("Salgado-Sosa's family qualifies as a 'particular social group,' protected for purposes of his asylum and withholding of removal claims"). Neither those who resist recruitment efforts by gangs nor their family members generally constitute a particular social group under the INA, nor do such bases amount to political opinion. *See Matter of S-E-G-*, 24 I&N Dec. 579 (BIA 2008); *see also INS v. Elias-Zacarias*, 502 U.S. 478 (1992) (forced recruitment or attempts to forcibly recruit into a guerrilla organization does not necessarily constitute persecution on account of political opinion). Membership or perceived membership in a criminal gang also does not constitute membership in a particular social group under the INA. *See Matter of E-A-G-*, 24 I&N Dec. 591 (BIA 2008); *see also Lizama v. Holder*, 629 F.3d 440 (4th Cir. 2011) (claimed particular social group of "young, Americanized, well-off Salvadoran male deportees with criminal histories who oppose gangs" not cognizable under the INA). At the same time, the BIA has noted that social group determinations are made on a case by case basis. *Matter of M-E-V-G-*, 26 I&N Dec. 227.

Ascertaining whether membership in a family-based social group is at least one central reason for any past or feared future persecution may present challenges, and the Fourth Circuit has encouraged an expansive view of nexus in these cases. *See Hernandez-Avalos v. Lynch*, 784 F.3d 944 (4th Cir. 2015) (mother who refused to allow her son to join a gang was persecuted on account of her membership in the particular social group of his family); *Cruz v. Sessions*, 853 F.3d 122 (4th Cir. 2017) (nexus to family relationship established because wife of murdered man was more likely than others to search for her husband, confront the suspect, and express an intent to go to the police); *Salgado-Sosa v. Sessions*, 882 F.3d 451 (4th Cir. 2018) (nexus found where man fought back when he was in his family's home during attack targeted at stepfather because membership in the family was why the man and not some other person became involved); *but see Velasquez v. Sessions*, 866 F.3d 188 (4th Cir. 2017) (personal dispute among family members may not equate to persecution on account of family group membership); *Matter of A-B-*, 27 I&N Dec. at 338-339;

*Cortez-Mendez v. Whitaker*, 912 F.3d 205 (4th Cir. 2019) (circumstantial evidence presented did not establish as a factual matter that the respondent's relationship to his father was at least one central reason for his mistreatment by gang members who sought to forcibly recruit him).

The evidence in this case indicates quite clearly that at least one central reason the Respondent was subject to past persecution was due to him being his mothers' son, essentially as a member of his nuclear family. That the Respondent is his mothers' son is the reason why he, and not another person, was threatened with death. He was threatened with death because he was Cecilia's son and the Barrio 18 gang targeted the Respondent to get at the mother and her earnings from the pupusa business. Pursuant to unambiguous and repeated guidance from the Fourth Circuit, the nexus requirement is satisfied in this case. *See generally Hernandez-Avalos v. Lynch*, 784 F.3d at 944; *Cruz v. Sessions*, 853 F.3d at 122; *Salgado-Sosa v. Sessions*, 882 F.3d at 451.

The Court finds that the Respondent's proposed social group, "Immediate Family Members of the Abrego Family," essentially his nuclear family, is cognizable. Membership in this family group is immutable. It is also sufficiently particular, as it is clearly delineated and easy to determine who is and is not in the group, and it is socially distinct.

With respect to social distinction, the immediate family lived in the same home, and his mother ran a pupusa business. Neighbors and others in the community recognized the family as a distinct group that was related, and ran a family business. Everyone knew that Cecilia Abrego was where you purchased your pupusas and that if you could not make it to the family's home, then the Respondent would deliver the pupusas to your house four days a week. As with many other precedential cases involving immediate family members, the proposed social group in this case too satisfies all of the legal requirements for recognition as a cognizable social group. *Cf. Crespin-Valladares v. Holder*, 632 F.3d at 124-126; *Hernandez-Avalos v. Lynch*, 784 F.3d at 949; *Cruz v. Sessions*, 853 F.3d at 127; and *Salgado-Sosa v. Sessions*, 882 F.3d at 457.

This finding—that the Abrego family was socially distinct—does not run afoul of the Attorney General's (AG) recent case, *Matter of L-E-A-*, 27 I&N Dec. 581 (A.G. 2019). In that case, the AG did not bar all family-based social groups from qualifying from relief. *Id.* at 595. Rather, the AG required that "[a]n applicant must establish that his specific family group is defined with sufficient particularity and is socially distinct in his society." *Id.* at 586. This case is a close call. But, the Court finds that the Respondent has established that Cecilia's family pupusa business was well-known in the community and therefore the family was socially distinct in society.

### C.  Relief from Removal Under CAT

The applicant for withholding of removal under the CAT bears the burden of proving that it is "more likely than not" that he or she would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). An applicant who establishes that he or she is entitled to CAT protection shall be granted withholding of removal unless he is subject to mandatory denial of that relief, in which case he shall be granted deferral of removal. 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a). An applicant is subject to mandatory denial of withholding of removal under the CAT if that individual has participated in the persecution of others, has been convicted of a particularly serious crime, has committed a serious nonpolitical crime outside of the U.S., or is a danger to U.S. national security. Under applicable provisions of law at 8 C.F.R. § 1208.16(d) and INA § 241(b)(3)(B), an alien who has been convicted of an aggravated felony for which the alien was sentenced to an aggregate term of imprisonment of at least five years is considered to have been convicted of a particularly serious crime. That does not preclude other crimes from being considered particularly serious crimes.

"Torture" is defined in the treaty and at 8 C.F.R. § 1208.18(a)(1). It is defined in part as the intentional infliction of severe physical or mental pain or suffering by, or at the instigation of, or with the consent or acquiescence of a public official. Acquiescence of a public official requires that the official have awareness of or remain willfully blind to the activity constituting torture prior to its commission, and thereafter breach his or her legal responsibility to intervene to prevent such activity. *See* 8 C.F.R. § 1208.18(a)(7).

To qualify for protection under the CAT, "specific grounds must exist that indicate the individual would be personally at risk." *Matter of S-V-*, 22 I&N Dec. 1306, 1313 (BIA 2000). The mere existence of a pattern of human rights violations in a particular country does not constitute a sufficient ground for finding that a particular person would be more likely than not to be tortured. *Id.*

In assessing the likelihood of future torture, the Court must consider all evidence relevant to the possibility of future torture, including: evidence of past torture inflicted upon the applicant; evidence that the applicant could relocate to a part of the country of removal where he is not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal; or other relevant information of conditions in the country of removal. 8 C.F.R. § 1208.16(c)(3). In order for an alien to meet the burden of proof for relief under the CAT, he or she

must demonstrate that each step in the necessary chain of events is more likely than not to happen. *Matter of J-F-F-*, 23 I&N Dec. 912 (A.G. 2006). Under Fourth Circuit precedent, the risks of torture from all sources must be aggregated when determining whether an individual is more likely than not to be tortured in a particular country. *Rodriguez-Arias v. Whitaker*, 915 F.3d 968 (4th Cir. 2019).

Instances of police brutality do not necessarily rise to the level of torture, nor does the indefinite detention of criminal deportees in substandard conditions. *Matter of J-E-*, 23 I&N Dec. 291, 301-02 (BIA 2002) (indefinite detention of criminal deportees in substandard conditions in Haiti does not constitute torture where there is no evidence that government officials intentionally and deliberately detain deportees under such conditions in order to inflict torture). Abusive or squalid conditions in pretrial detention facilities, prisons, or mental health institutions will not constitute torture when those conditions occur due to neglect, a lack of resources, or insufficient training and education, rather than a specific intent to cause severe pain and suffering. *Matter of J-R-G-P-*, 27 I&N Dec. 482 (BIA 2018).

Torture must come at the hands of the government. *Matter of S-V-*, 22 I&N Dec. at 1311-12. This can include acquiescence of officials provided it meets the conditions set out in the regulations at 8 C.F.R. § 1208.18(a)(7) ("Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity"). Awareness can include actual knowledge and willful blindness. *See* Senate Exec. Rep. 101-30 at 9 (1990); *see also Matter of S-V-*, 22 I&N Dec. at 1312. In *Matter of S-V-*, the BIA elaborated that a respondent needs to show more than that government officials are aware of the activity and powerless to stop it and needs to show that government officials are willfully accepting of the activity. *Matter of S-V-*, 22 I&N Dec. at 1311-1312. Following *Matter of S-V-*, the Attorney General, in *Matter of Y-L-, A-G-, & R-S-R-*, 23 I&N Dec. 270 (A.G. 2002), elaborated on the definition of acquiescence and indicated that the relevant inquiry is "whether governmental authorities would approve or 'willfully accept' atrocities committed." *Id.* at 283.[6]

The Fourth Circuit has clarified that "willful blindness can satisfy the acquiescence

---

[6] That decision noted in part that it would not suffice for a respondent to show that isolated, rogue government agents were involved in atrocities despite a government's best efforts to root out misconduct.

12

component of 8 C.F.R. § 1208.18(a)(1)." *See Suarez-Valenzuela v. Holder*, 714 F.3d 241, 246 (4th Cir. 2013). Pursuant to the willful blindness standard, government officials acquiesce to torture when they have actual knowledge of or turn a blind eye to torture. *Id.* at 245-246.

Decisions regarding an alien's likely future mistreatment are factual determinations subject to review only for clear error; the determination as to whether any such mistreatment constitutes torture as a legal matter is subject to de novo review. *Turkson v. Holder*, 667 F.3d 523 (4th Cir. 2012); *see also Kaplun v. Attorney General*, 602 F.3d 260 (3d Cir. 2010). Whether the government would acquiesce in any future torture is likewise a mixed question of law and fact. *Cruz-Quintanilla v. Whitaker*, 914 F.3d 884 (4th Cir. 2019).

Here, the Respondent has not shown that it is "more likely than not" that he would be tortured if he were to be removed to El Salvador.

## IV. Conclusion

The Respondent's application for asylum is time-barred without exception. However, he has established past persecution based on a protected ground, and the presumption of a well-founded fear of future persecution. DHS has not shown there are changed circumstances in Guatemala that would result in the Respondent's life not being threatened, or that internal relocation is possible and reasonable under the circumstances. Therefore, the Respondent's application for withholding under the Act is granted. Finally, his CAT claim fails because he has not shown that he would suffer torture.

## ORDER

It is hereby ordered that:

I. the Respondent's application for asylum pursuant to INA § 208 is **DENIED**;

II. the Respondent's application for withholding of removal pursuant to INA § 241(b)(3) is **GRANTED**; and

III. the Respondent's application for withholding of removal under the Convention Against Torture is **DENIED**;

10/10/19
Date

David M. Jones
United States Immigration Judge
Baltimore, Maryland

### Appeal Rights

Each party has the right to appeal this Court's decision to the Board of Immigration Appeals. Any appeal must be filed within 30 calendar days of the mailing of this decision. Under the regulations, a notice of appeal must be received by the Board by that deadline. The notice of appeal must also state the reasons for the appeal. *See* 8 C.F.R. § 1240.15.